IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| FREDRICK B. MOSLEY, ) | |
| AIS #233819, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:13-CV-549-MHT |
| ) | (WO) |
| ) | |
| SGT. MITCHELL BORDERS, et al., ) | |
| ) | |
| Defendants. ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

### I.  INTRODUCTION

This case is before the court on a 42 U.S.C. § 1983 complaint and amendment thereto filed by Fredrick B. Mosley ("Mosley"), a state inmate.  In the instant complaint, Mosley challenges the constitutionality of a disciplinary action initiated against him for failing to obey a direct order during his confinement at the Easterling Correctional Facility ("Easterling"). Specifically, Mosley alleges that the defendants violated his right to equal protection, deprived him of due process, conspired against him, ignored the administrative rule governing disciplinary actions and acted in retaliation due to his expressing an intention to exercise his right of access to the courts. Doc. 1 at 2–3; Doc. 5 at 1–2.  Mosley names Sgt. Mitchell Borders, Capt. Michael Strickland and Officer Ken Brook, correctional officers at Easterling, as defendants in this cause of action.  Mosley seeks a declaratory judgment and monetary damages for the alleged violations of his constitutional rights. Doc. 1 at 4.

The defendants filed an answer, special report and supporting evidentiary materials, including affidavits and certified prison records, addressing Mosley's claims for relief.  In these

1

documents, the defendants deny they acted in violation of Mosley's constitutional rights. After receipt of the defendants' special report, the court issued an order directing Mosley to file a response to the report, including affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 18 at 2. The order specifically cautioned Mosley that "the court may at any time [after expiration of the time for his response] and **without further notice to the parties** (1) treat the special report and any evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with law." Doc. 18 at 2–3. Pursuant to this order, the court deems it appropriate to treat the defendants' report as a motion for summary judgment. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof, the sworn complaint, and the plaintiff's response to the report, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007); Fed. R. Civ. P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes

2

demonstrate the absence of a genuine issue [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (noting that moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial).

The defendants have met their evidentiary burden. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery*, 64 F.3d at 593-594 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when a party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the

3

outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After this review, the court finds that Mosley has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III. DISCUSSION

#### A. Relevant Facts

On July 10, 2013, Mosley refused to provide his fingerprints after being ordered to do so by several correctional officials, including defendant Strickland. On this same date, Strickland initiated disciplinary action against Mosley for a violation of Rule 925, the failure to obey a direct order of a correctional official. Doc. 1-2 at 1, ¶3–¶4; Doc. 17-1 at 16, ¶3–¶4. On July 23, 2013, Officer Kelvin Teal served Mosley with notice of the disciplinary charge and the scheduled date for the disciplinary hearing related to this charge. Doc. 17-1 at 16, ¶5. Mosley refused to sign acknowledging receipt of service of the disciplinary. Doc. 17-1 at 16, ¶6. In addition, although provided an opportunity to do so, Mosely did not identify any witnesses when

served with the disciplinary. Doc. 17-1 at 16, ¶6–¶7. When Mosley arrived at the hearing, he provided the hearing officer, defendant Borders, with a list of potential questions, several of which Mosley sought to address to the hearing officer. Doc. 17-4 at 1. Borders advised Mosley that he had not witnessed the incident underlying the disciplinary charge and, therefore, had no "personal knowledge of the circumstances of the incident" rendering him unable to provide any information relevant to the charge. Doc. 17-4 at 1. Thus, Borders proceeded with the disciplinary hearing.

During the hearing, Mosley questioned Strickland and was also given the opportunity to testify on his own behalf and present evidence. Doc. 1-2 at 1; Doc. 17-1 at 16. Upon completion of the noticed disciplinary hearing, Borders found Mosley guilty of failing to obey a direct order. Doc. 1-2 at 2; Doc. 17-1 at 17. The sanctions imposed upon Mosley for this disciplinary infraction consisted of the loss of canteen, telephone and visitation privileges for forty-five days and placement in segregation for the same period of time. Doc. 1-2 at 2; Doc. 17-1 at 17.

Mosley contends that the disciplinary action lodged against him violated his rights to equal protection and due process. Doc. 1 at 2–3. Mosley further alleges that the actions made the basis of the instant complaint resulted from a conspiracy against him and retaliation. Doc. 1 at 2–3; Doc. No. 5 at 1.

### B. Absolute Immunity

With respect to those claims lodged against the defendants in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, or Congress has abrogated the state's immunity. Alabama has

not waived its Eleventh Amendment immunity, and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997) (citing *Pennhurst St. Sch. & Hospital v. Halderman*, 465 U.S. 89, 100 (1984); *Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996); *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990)).

In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### C.  Equal Protection

Mosley, an African American inmate, alleges that the actions of the defendants were "discriminatory" in nature. Doc. 1 at 2. In his amendment to the complaint, Mosley repeats his allegation of "discrimination" in terms of a violation of his equal protection rights. Doc. 5 at 1. In support of this claim, Mosley asserts that the hearing officer reviewed investigatory documents pertaining to the incident but refused to watch the digital recording of the incident that indicated Mosley refused the orders because he believed the orders were issued at the behest of Houston County authorities. Doc. 5 at 1. Mosley also alleges that defendants Strickland and Borders "use[d] race, on both side[s], at [his] hearing." Doc. 5 at 1.

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed. . . . The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,'. . . nor does it require the State to 'equalize [prison] conditions.'" *Ross v. Moffitt*,

417 U.S. 600, 611-612 (1974); *Hammond v. Auburn Univ.*, 669 F. Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally."). To establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y, Dept. of Corr.*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006) (citing *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Fla. Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)). "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . . Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264–65 (1977). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Admin. of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). In a case such as this one, where the plaintiff challenges actions of correctional officials, exceptionally clear proof of discrimination is required. *Fuller v. Georgia Bd. of Pardons & Parole*, 851 F.2d 1307, 1310 (11th Cir. 1988). Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp,* 481 U.S. 279, 292 (1987).

Since this case is before the court on a properly supported motion for summary judgment from the defendants, Mosley bears the burden of producing evidence which would be admissible at trial sufficient to show that the actions of the defendants during the disciplinary process resulted from intentional discrimination. *Celotex*, 477 U.S. at 322–24; *Waddell*, 276 F.3d at 1279. The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252; *Waddell*, 276 F.3d at 1279 (holding that conclusory allegations based solely on subjective beliefs are insufficient to oppose summary judgment). Instead, the law is clear that the plaintiff must present significant probative evidence of intentional discrimination to preclude summary judgment in favor of the defendants. *Anderson*, 477 U.S. at 249.

Initially, Mosley fails to identify any similarly situated inmate who received differential favorable treatment from the defendants. Thus, Mosley's "equal protection claim necessarily fails first because he has not [asserted] that he was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1319. In addition, Mosley's self-serving, conclusory and unsupported allegation that the defendants used race during the disciplinary proceedings provides no basis for relief. The defendants deny they undertook any action against Mosley based on race or any other constitutionally impermissible reason. Instead, the defendants aver that the disciplinary lodged against Mosley and the finding of guilt on the charged offense occurred solely due to Mosley's violation of an institutional rule—his failure to obey direct orders issued to him by correctional officials to have his fingerprints taken. Interestingly, Mosley acknowledges his refusal to obey these orders but argues that he did so because he would "not do[] nothing" for Houston County and he believed authorities from that county had

requested his fingerprints. Doc. 5 at 1. Mosley has completely failed to present evidence, significantly probative or otherwise, that race or some other constitutionally impermissible factor constituted a motivating factor in the actions of the defendants about which he complains. The record is therefore devoid of evidence that the defendants acted in an intentionally discriminatory manner. Thus, the defendants are entitled to summary judgment on the equal protection claim.

### D. Due Process

Mosley challenges the due process afforded to him during the disciplinary proceedings conducted on the charge of failure to obey a direct order. The punishments imposed upon Mosley for this disciplinary infraction were 45 days without store privileges, telephone and visitation privileges, and confinement in disciplinary segregation for 45 days. Doc. 1-2 at 2; Doc. No. 17-1 at 17. Under the circumstances of this case, Mosley's due process claim entitles him to no relief.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required:

> The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state.

*Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Sandin*, 515 U.S. at 485-486 (noting temporary confinement of inmate in disciplinary segregation does not implicate a constitutionally protected liberty interest); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) ("The punishments [inmate] suffered because of his disciplinary conviction (demotion in status, segregation, and transfer) raise no due process concerns."); *see also Meachum v. Fano,* 427 U.S. 215, 225 (1976) (holding that no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."); *Olim v. Wakinekona*, 461 U.S. 238, 245–46 (1983) (prisoner has no constitutional right to be confined in a particular institution).  Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law.").  In addition, a temporary denial of privileges does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.  Thus, the deprivations imposed upon Mosley based on the challenged disciplinary did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id*.  This court must therefore determine whether the actions about which Mosley complains involve the

10

deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*. As the Supreme Court has opined,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S. Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S. Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum*. Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483–484, 115 S. Ct. 2293 (citations and footnote omitted).
> After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S. Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005).

Mosley's confinement in disciplinary segregation for 45 days did not deprive him of a state-created liberty interest. *See Sandin*, 515 U.S. at 486 (hodling that confinement in disciplinary segregation for thirty days did not violate the Constitution or impinge on a state-created liberty interest); *Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998) (holding

that confinement in segregation for two months did not deprive inmate of a constitutionally protected liberty interest). Moreover,

> [w]ith respect to [Plaintiff's] loss of canteen, telephone, and visiting privileges, a liberty interest is not implicated either under the Constitution or by the State's creation. The Court finds the Constitution does not grant an inmate a right in visitation, canteen, and telephone privileges. *See Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (finding an inmate does not have a protected interest in visitation arising from the Due Process Clause); *Overton v. Bazzetta*, 539 U.S. 126, 131, 134, 123 S. Ct. 2162, 2167, 2168, 156 L.Ed.2d 162 (2003) (upholding a two-year restriction on visitation privileges for two substance abuse violations because prison confinement requires the surrendering of liberties and privileges enjoyed by other citizens, with free association being least compatible right to prison confinement); *Charriez v. Sec'y, Fla. Dep't of Corrs.*, 596 F. App'x 890, 894 (11th Cir. 2015) (unpublished) (finding that the one-year loss of visitation privileges did not implicate a state-created liberty interest as there was no right to unfettered visitation); *Moore v. Pemberton*, 110 F.3d 22, 23 (7th Cir. 1997) (finding no loss of liberty or property when prisoner received as part of his disciplinary punishment a two-week loss of commissary privileges); *Walker v. Loman*, CA 06–0896–WKW, 2006 WL 3327663, at *1, *3 (M.D. Ala. Nov. 15, 2006) (unpublished) (holding the 90-day loss of store, telephone and visitation privileges, recommended custody increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest). Moreover, the Alabama courts have determined a prisoner does not have a state-created liberty interest in store, telephone, and visitation privileges. *Dumas v. State*, 675 So. 2d 87, 88 (Ala. Crim. App. 1995).
> 
>   An inmate's ability to visit, to shop, and to use the telephone is heavily restricted while in prison, as are most aspects of an inmate's life. *Sandin*, 515 U.S. at 485, 115 S. Ct. at 2301. The further restriction of these privileges for a short period of time is a less severe punishment than confinement to disciplinary segregation. Such restriction is not "atypical," nor is it a "significant hardship" under the *Sandin* analysis, and is a type of discipline that should be expected by a prisoner as an incident to his criminal sentence. *See Id*. at 475, 485, 115 S. Ct. at 2296, 2301. Thus, [Plaintiff] does not have a liberty interest in canteen, visitation, and telephone privileges to which due process attaches.

*Bass v. Wilson, et al.*, 2015 WL 4742473, at *5–*6 (S.D. Ala. 2015).

Applying the *Sandin* inquiry, it is clear that the temporary loss of canteen, telephone and visitation privileges and short-term confinement in segregation "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon

the plaintiff. *Id*. at 485. In light of the foregoing, the court concludes that the aforementioned sanctions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Consequently, due process did not attach to the disciplinary proceeding and summary judgment is due to be granted in favor of the defendants.

### E. Conspiracy Claims

1. <u>The Civil Conspiracy Claim</u>. Mosley makes the specious and unsupported allegation that the adverse actions about which he complains resulted from a conspiracy among the defendants to deprive him of his constitutional rights. The defendants deny engaging in any conspiratorial acts against Mosley. The evidentiary materials filed by the defendants establish that the disciplinary action taken against Mosley and the finding of guilt by the hearing officer resulted from Mosley's violation of an institutional rule—his repeated failure to obey orders issued to him by correctional officials.

"Conspiring to violate another person's constitutional rights violates section 1983." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002) (citations omitted). To proceed on a conspiracy claim under 42 U.S.C. § 1983, "a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' . . . [T]he linchpin for conspiracy is agreement." *Bailey v. Bd. of Cnty. Comms. of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied,* 506 U.S. 832 (1992) (quoting *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990), *cert. denied,* 500 U.S. 932 (1991)). In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, . . . [he] must [produce] some evidence of agreement between the defendants." *Rowe*, 279 F.3d at 1283-1284. Merely "stringing together" acts of individuals is

insufficient to demonstrate the existence of a conspiracy. *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).

Other than his suppositious and conclusory allegation of a conspiracy, Mosley presents no evidence to establish an actual conspiracy to deprive Mosley of his constitutional rights. Accordingly, the court concludes that Mosley's bare allegation of a conspiracy is insufficient to support a claim for relief in this 42 U.S.C. § 1983 action. *See Harvey*, 949 F.2d at 1133; *Fullman*, 739 F.2d at 556-557.

2. Potential Claims Under 18 U.S.C. § 241 and § 242. To the extent the complaint can be construed as seeking relief for alleged criminal actions purportedly committed in violation of his constitutional rights as prohibited by 18 U.S.C. § 241 and § 242, this request for relief is likewise subject to summary dismissal. "Title 18 U.S.C. § 241 is a statute that criminalizes conspiracies against a person's rights under the Constitution or laws of the United States. There is no private right of action under this criminal statute." *Gipson v. Callahan*, 18 F. Supp. 2d 662, 668 (W. D. Tex 1997). "Title 18 U.S.C. § 242 makes it a crime to willfully deprive persons under color of law of their rights under the Constitution or laws of the United States. The statute does not create a private cause of action." *Id.* (citing *Risley v. Hawk*, 918 F. Supp. 18, 21 (D.D.C. 1996), *aff'd*, 108 F.3d 1396 (D.C. Cir. 1997); *Dugar v. Coughlin*, 613 F. Supp. 849, 852 n.1 (S.D. N.Y. 1985); *Powers v. Karen*, 768 F. Supp. 46, 51 (E.D.N.Y. 1991), *aff'd*, 963 F.2d 1552 (2nd Cir. 1992); *Dugar v. Coughlin*, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985)); *see Rockefeller v. United States Ct. of Appeals Off. for Tenth Circuit Judges*, 248 F. Supp. 2d 17, 23 (D.D.C 2003) (holding plaintiff foreclosed "from asserting claims pursuant to 18 U.S.C. §§ 242 and 371 because, as criminal statutes, they do not convey a private right of action").

In light of the foregoing, it is clear that Mosley is precluded from obtaining relief under 18 U.S.C. § 241 and § 242 "because, as criminal statutes, they do not convey a private right of action" nor do they authorize an individual to initiate criminal proceedings. *Gipson*, 18 F. Supp. 2d at 668; *Rockefeller*, 248 F. Supp. 2d at 23. Thus, Mosley's claims arising under these criminal statutes likewise provide no basis for relief.

### F. Retaliation

Mosley alleges that defendant Strickland initiated the disciplinary charge against him in retaliation for advising officers during the incident that he intended to file a lawsuit against them. Doc. 5 at 1. Defendant Strickland denies this allegation and maintains that at the time he prepared the disciplinary charge on July 10, 2013 he had no knowledge of whether Mosley would actually file a civil action and issued the disciplinary solely due to Mosley's violation of an institutional rule. Doc. 17-1 at 16; Doc. 17-2 at 1–2. Mosley acknowledges throughout his pleadings that he disobeyed orders issued by various correctional officials to provide them his fingerprints.

The law is well settled that "[t]he first amendment prohibits state officials from retaliating against prisoners for exercising their right of [access to the courts]. . . . The gist of a retaliation claim is that a prisoner is penalized for exercising a [protected] right." *Thomas v. Evans*, 880 F.2d 1235, 1241–42 (11th Cir. 1989) (citation omitted); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). An alleged act of retaliation in the context of a prisoner civil rights action is, however, especially complicated as inmates often attempt to "inappropriately insulate themselves from [adverse decisions or] actions by drawing the shield of retaliation around them." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084 (1996).

It is essential that federal courts "carefully scrutinize retaliation claims" brought by prisoners challenging adverse actions of state officials. *Woods*, 60 F.3d at 1166. "[C]ourts must approach prisoner claims of retaliation with skepticism and particular care. . . . This is [necessary because prisoners'] . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To proceed on a claim for retaliation and withstand the entry of summary judgment, an "inmate must establish . . . three elements: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [defendants'] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999). An inmate has the initial burden of establishing a prima facie case of unlawful retaliation by showing "that his conduct was constitutionally protected and that this conduct . . . was a 'motivating factor'" behind the adverse action of the defendant. *Mt. Healthy*, 429 U.S. at 287. It is well established that merely alleging the ultimate fact of retaliation is insufficient. *Cain v. Lane*, 857 F.2d 1139, 1142, n.6 (7th Cir. 1988); *Woods*, 60 F.3d at 1166. Additionally, conclusory allegations are insufficient to demonstrate the existence of each element requisite to establishing retaliation. *Morales v. Macklam*, 278 F.3d 126, 131 (2nd Cir. 2002); *Bennett v. Goord*, 343 F.3d 133, 137 (2nd Cir. 2003) (holding that, because prisoner retaliation claims are

prone to abuse, "we are careful to require non-conclusory allegations"). With respect to the causal relationship element, a prisoner must demonstrate that state officials intended to retaliate for his exercise of a right protected under the First Amendment and, but for the retaliatory motive, the adverse act complained of would not have occurred. *Woods*, 60 F.3d at 1166; *Smith*, 532 F.3d at 1278.

Mosley asserts that during the incident he advised correctional officers of his intention to file a civil action related to their actions of obtaining his fingerprints and alleges that the decision by defendant Strickland to initiate disciplinary action occurred in retaliation for his voicing his intention to file a civil action. Thus, Mosley satisfies the first element of his retaliation claim. *Smith*, 532 F.3d at 1277. The second element requires Mosley to demonstrate that receipt of a disciplinary action "would likely deter a [prisoner] of ordinary firmness" from accessing the courts. *Id*. This "presents an objective standard and a factual inquiry." *Id*. It does not appear that Mosley has established this element of his retaliation claim as he immediately filed a civil action challenging the constitutionality of the disciplinary. Moreover, federal courts, including this court, routinely receive cases from inmates despite issuance of disciplinary actions against them. Nevertheless, assuming *arguendo* demonstration of the deterrence element, Mosley fails to satisfy the third requisite element of a retaliation claim—a causal connection between his constitutionally protected activity and the adverse action of the defendants.

The causal connection inquiry focuses on the "subjective motivation of the defendants[,]" *Thaddeus-X*, 175 F.3d at 399, and this court must therefore determine "whether the defendant[] [in initiating disciplinary action was] subjectively motivated" by Mosley's exercise of his right of access to the courts. *Smith*, 532 F.3d at 1278. The subjective motivation issue is resolved by most courts under the burden-shifting formula set forth in *Mount Healthy City Sch. Dist. Bd. of*

*Educ. v. Doyle,* 429 U.S. 274, 287 (1977).  This formula requires that the plaintiff first meet "his burden of establishing that his protected conduct was a motivating factor behind any harm" and then "the burden of production shifts to the defendant.  If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." *Thaddeus-X*, 175 F.3d at 399.  If an inmate meets his burden with appropriate evidence, the burden of production shifts to the defendant to show that he "would have reached the same [adverse] decision . . . even in the absence of the protected conduct." *Mt. Healthy*, 429 U.S. at 287.  "Under the *Mt. Healthy* approach, if the government official 'can prove that [he] would have taken the adverse action in the absence of the plaintiff's protected conduct, [he] cannot be held liable.'" *Smith*, 532 F.3d at 1278 n.22 (quoting *Thaddeus-X*, 175 F.3d at 388 n.4).

Defendant Strickland denies the allegation of retaliation and argues that the decision to issue a disciplinary was based exclusively on Mosley's violation of an institutional rule, a rule violation Mosley acknowledges he committed.  It is therefore undisputed that Mosley's behavior warranted issuance of a disciplinary action.  Additionally, the only appropriate evidence before the court establishes that Mosley would have received a disciplinary regardless of his stated intention to seek access to the court or his subsequent filing of such lawsuit.  Thus, the record contains no evidence that Mosley's potential legal action constituted a "motivating factor" in the decision to initiate disciplinary action against him for his admitted failure to obey orders directed to him by correctional officials.  Mosley offers only his conclusory allegation of ultimate fact that defendant Strickland retaliated against him due to his legal activities.  This allegation is insufficient to defeat summary judgment. *Waddell*, 276 F.3d at 1279; *Holifield*, 115 F.3d at 1564 n.6.  Finally, the record before the court does not contain admissible or potentially admissible

evidence from which a reasonable fact finder could infer the requisite motivating factor for purposes of establishing the causal connection nor do the circumstances, when taken as a whole, support making such an inference.  Consequently, defendant Strickland is entitled to summary judgment on the retaliation claim.

### G.  Violation of Administrative Rule

Mosley asserts that the defendants failed to serve the disciplinary charge on him within the time required by Administrative Regulation No. 403.[1]  As previously determined, due process did not attach to the disciplinary proceeding, and infringements of agency rules, regulations or procedures do not, without more, amount to constitutional violations. *Sandin*, 515 U.S. at 484–86; *Magluta v. Samples,* 375 F.3d 1269, 1279 n.7 (11th Cir. 2004) (holding that mere fact governmental agency's regulations or procedures may have been violated does not, standing alone, raise a constitutional issue); *Myers v. Klevenhagen,* 97 F.3d 91, 94 (5th Cir. 1996) (holding that claim that prison officials have not followed their own policies and procedures does not, without more, amount to a constitutional violation); *United States v. Caceres,* 440 U.S. 741, 751–52 (1979) (holding that mere violations of agency regulations do not raise constitutional questions); *Weatherholt v. Bradley,* 316 Fed. App'x 300, 303 (4th Cir. 2009) (same); *see also Riccio v. Cnty. of Fairfax,* 907 F.2d 1459, 1459 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by its law is not a federal violation).  Moreover, a review of the record demonstrates that correctional officials served the disciplinary action on Mosley within ten working days as required by the applicable administrative regulation.  For the foregoing reasons, the defendants are entitled to summary judgment on this claim.

---

[1] The regulation requires that a "Disciplinary Report shall be served on the inmate within ten (10) working days . . . [a]fter the violation is reported and/or discovered[.]" Administrative Regulation No. 403, § 5 ¶A1b(1), available at http://www.doc.satate.al.us.  Working days are "Monday through Friday excluding holidays." *Id*. at § 3, ¶N.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be dismissed with prejudice.

4. Costs be taxed against the plaintiff.

It is further ORDERED that on or before April 29, 2016 the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 15th day of April, 2016.

_____/s/ Gray M. Borden_____
UNITED STATES MAGISTRATE JUDGE